1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM C. ULERY,

    Petitioner,

  v.

DOUG WADDINGTON,

    Respondent.

Case No.  C06-5192RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**OCTOBER 2Oth, 2006**

  This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to

Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.

Petitioner filed this action pursuant to 28 U.S.C. § 2254.

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

  Petitioner challenges his Thurston County convictions for one count of attempted murder in

the first degree, one count of burglary in the first degree, and one count of tampering with a witness.

The jury returned special verdicts for use of a deadly weapon as to the attempted murder and

burglary convictions.  Petitioner was sentenced to 285 months confinement on April 21st, 2000.

1   (Dkt. # 17, Exhibit 7).

2   Petitioner seeks habeas relief claiming a Jury Instruction impermissibly "contained a

3   conclusive presumption that Ulery was an accomplice to a murder." (Dkt. # 1, page 12). Petitioner

4   also alleges counsel was ineffective in failing to properly investigate the character of a witness, Babe

5   Lemour. Ms. Lemour was found in contempt of court for repeatedly failing to follow the court's

6   instruction to just answer the question without providing explanation or unsolicited opinons. (Dkt. #

7   17, Exhibit 2, verbatim transcript pages 258 to 306). The trial judge made the finding of contempt in

8   the presence of the jury. At the end of her testimony he excused the jury and again addressed the

9   contempt issue. Ms. Lemour was fined One Hundred and Fifty Dollars. (Dkt. # 17, Exhibit 2,

10  verbatim transcript page 303).

11  After reviewing the materials submitted by the parties including the trial transcript the court

12  recommends **DENYING** the petition.

13  <u>SENTENCE, CONVICTION, AND FACTS</u>

14  Petitioner was found guilty after a jury trial of one count of attempted murder in the first

15  degree, one count of burglary in the first degree, and one count of tampering with a witness. The

16  jury returned special verdicts for use of a deadly weapon as to the attempted murder and burglary

17  convictions. Petitioner was sentenced to 285 months confinement on April 21st, 2000. (Dkt. # 17,

18  Exhibit 7). The facts were summarized by the Washington State Court of Appeals as follows:

19
20  In April 1999, Mannering armed herself with a knife and forced her way into
    Allie's home. The two struggled, and Allie eventually made Mannering drop the knife
    by cutting off her airway with her elbow. Both women were cut in the attack. Once
21  Allie disarmed Mannering, she asked what she was doing in her house. Mannering
    responded that Ulery had sent her. Mannering got away from Allie and left the scene.

22  Ulery and Allie had lived together for approximately a year until the previous
23  December (1998), when Ulery allegedly assaulted her. Allie moved out, reported the
    incident, and domestic violence charges were filed against Ulery. That case was
24  pending at the time of Mannering's assault on Allie.

25  At the time of the events at issue here, Ulery and Mannering had been
    romantically involved for approximately four months (from January to April). In the
    weeks leading up to the assault, Ulery and Mannering spent several nonconsecutive
26  nights together. Some of these rendezvous occurred at the Motel 6 in Tumwater.
    Sometimes Mannering would pay for the room, sometimes Ulery.

27
28  Mannering testified that for about a month before the attack, Ulery expressed

REPORT AND RECOMMENDATION
Page - 2

his desire to have Allie out of their lives and ultimately told Mannering that he wanted her to kill Allie. On April 3, 1999 (the day before the attack), Ulery and Mannering spent the night at the Motel 6; Ulery paid for the room.

After the attack, Mannering returned to the motel, where Ulery tended to her injured hand. They then drove south to Portland. Ulery urged Mannering to go to Idaho. When the two returned to Washington a few days later, Mannering's grandmother told her that the sheriff's department wanted to talk to her.

Mannering met with Detective Glenn Quantz of the Thurston County Sheriff's Department on April 8, 1999. She told him of Ulery's involvement in the attack on Allie and agreed to cooperate with the investigation by encouraging Ulery to come to the Motel 6. The sheriff's department would rent three rooms, and Mannering's telephone and in-person conversations with Ulery would be monitored and recorded. The sheriff's department obtained judicial authorization to record the conversations. Deputies told Mannering that Ulery would be arrested once the detectives heard enough incriminating information on the wire.

. . .

Mannering called Ulery that night from the Motel 6. The transcript of that conversation show[sic] that Ulery was surprised to hear that Mannering was in town, thinking that she was in Idaho. At first he was reluctant to meet her at the motel and urged her to get out of town. He promised to give her money. He told her that they should not be around each other. But, ultimately, Ulery agreed to meet Mannering at the motel.

At the motel, the two discussed the same issues: Ulery again offered Mannering money and urged her to grasp the seriousness of the situation and go to Idaho. Detective Cheryl Stines monitored this conversation; Quantz and Detective Tim Arnold were also in the monitoring room, awaiting Stines' signal. When they got that signal, Quantz and Arnold entered Mannering's motel room and immediately placed Ulery under arrest. Quantz handcuffed him and read his <u>Miranda</u> rights.

(Dkt. # 17, Exhibit 15 (footnotes omitted).

<u>PROCEDURAL HISTORY</u>

Petitioner through counsel filed a direct appeal. Appellate counsel's brief raised six legal issues:

> (1)   The admission of Mr. Ulery's statement to Deputy Quantz violated the Washington State Privacy Act, Chapter 9A.73 RCW;
>
> (2)   The trial court erred in holding that Mr. Ulery had no expectation of privacy, for Fourth Amendment purposes, in the motel room;
>
> (3)   The police conduct in Mr. Ulery's arrest and subsequent confession also violated his right to privacy under Wash. Const. Art. I, § 7;
>
> (4)   The trial court erred in finding that Mr. Ulery reinitiated contact with the detective after invoking his right to counsel;
>
> (5)   The trial court commented on the evidence, in violation of Wash. Const. Art.

IV, § 16, by finding a defense witness (Babe Lemour) in contempt in the jury's presence; and

(6)     The trial court's Instruction 8 regarding accomplice liability impermissibly relieved the State of its burden of proving all the elements of the crime.

(Dkt. #17, Exhibit 8 Appellant's Opening Brief).

In a pro se supplemental brief petitioner raised the following issues:

(1)     Instruction 1 contained an unlawful comment on the evidence;

(2)     His right to a grand jury indictment was violated;

(3)     The imposition of sentence enhancements for being armed with a deadly weapon, and running those enhancements consecutively, violate double jeopardy;

(4)     The trial court violated due process and equal protection by conducting unreported side-bar conferences; and

(5)     The trial court erred by failing to swear in the jury.

(Dkt. # 17, Exhibit 9). The Washington State Court of Appeals asked for additional briefing on the issue of harmless error regarding jury instruction number 8 and received that briefing. (Dkt. # 17, Exhibit 13). On January 24th, 2003 the conviction and sentence were affirmed. (Dkt. # 17, Exhibit 15). The court found jury instruction number 8 was faulty but the error was harmless given the evidence and arguments of counsel. (Dkt. # 17, Exhibit 15).

Petitioner filed a motion for discretionary review and raised three issues:

1.     Did the Court of Appeals err in sua sponte determining that Christina Mannering, the state's agent, was the "host" for purposes of concluding that the police had consent to enter a motel room to arrest Ulery?

2.     Did the Court of Appeals err in concluding that deficient jury instructions regarding accomplice liability was harmless error?

3.     Under the State constitution, is an instruction that relieves the state from proving an element of the offense susceptible to a harmless error analysis?

(Dkt. # 17, Exhibit 18). Review was denied without comment on September 30th, 2003. (Dkt. # 17, Exhibit 19).

Petitioner filed a personal restraint petition in the Washington State Court of Appeals on September 28th, 2004. (Dkt. # 17, Exhibit 21). Petitioner argued trial counsel was ineffective by:

(1)     Failing to object to Instruction 9 on the ground that it contained a presumption that Christina Mannering was Mr. Ulery's accomplice,

(2)     Failing to object to Instruction 9 on the ground that it was a comment on the evidence, and

(3)     Failing to investigate the character of Babe Lemour and failing to move for a mistrial after she was found to be in contempt of court.

(Dkt. # 17, Exhibit 21).  The court denied the petition November 8th, 2005.  (Dkt. # 17, Exhibit 24).

Petition sought discretionary review in the Washington State Supreme Court and raised the following issues:

(1)     Counsel was ineffective in failing to object to Instruction number 9 because it contained a conclusive presumption, relieved the state of its burden of proof and violated Ulery's right to a fair trial and to due process under the Fourteenth Amendment.

(2)     Counsel was ineffective for failing to properly investigate the character of Babe Lemour and for failing to move for a mistrial after she was found in contempt in the presence of the jury, and under the circumstances the Court of Appeals erred in failing to grant Ulery's request for an evidentiary hearing on this issue.

Review was denied in a three page opinion February 16th, 2006.  (Dkt # 17, Exhibit 25).  A motion to modify that ruling was also denied.

This Federal Habeas Corpus petition was then filed and petitioner raises two claims. Petitioner alleges counsel was ineffective for:

(1)     Failing to objecting to jury instruction number 9 as containing a conclusive presumption that Christina Mannering was an accomplice of Mr. Ulery,

(2)     Failing to investigate the character of Babe Lemour and failing to move for a mistrial after she was found in contempt in the presence of the jury.

(Dkt. # 1).  Respondent concedes the claims are exhausted and responds on the merits.  (Dkt # 16).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would

have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

### STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

### DISCUSSION

A.      Ineffective assistance of counsel for failing to object to jury instruction number 9.

Jury instruction number 9 informed the jury that testimony of an accomplice given on behalf of the plaintiff,  "should be subjected to careful examination in light of other evidence and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, you are satisfied beyond a reasonable doubt of its truth." (Dkt # 17, Exhibit 3, page 455).

Petitioner argues counsel was ineffective for not objecting to this instruction.

Every ineffective assistance of counsel claim is subject to a two prong analysis. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  In order to establish ineffective assistance of counsel, a petitioner must show that; (1) Counsel's representation fell below an objective standard of reasonableness and, (2) That the deficient performance prejudiced the defendant. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 689.  In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. <u>Strickland</u>, 466 U.S. at 694.

Here, the jury instruction at issue is a standard pattern instruction.  The Washington State Court of Appeals considered this issue and stated:

> The ususal test for the sufficiency of a jury instruction is whether "it correctly states the law, is not misleading, and permits counsel to argue his theory of the case." *State v. Mark*, 94 Wn. 2d 520, 526, 618 P.2d 73 (1980).

> Cautionary instructions regarding accomplice liability are generally given when an accused accomplice testifies. *See, e.g. State v. Harris* 102 Wn.2d, 148, 153 685 P.2d 584 (1984), *overruled on other grounds, State v. Brown*, 113 Wn.2d 520, 554 782 P.2d 1013 (1989).  Ulery does not contest this rule, but argues that the only issue is whether he and Mannering were accomplices in the assault on Allie, the court ought not to have given an instruction that an accomplice had testified.  Thus, the instruction relieved the State of its duty to prove an accomplice relationship between Ulery and Mannering.

> A mandatory presumption requires a jury to find a presumed fact from a proven fact. *State v. Deal*, 128 Wn.2d 693, 699, 911 P.2d 996 (1996).  Mandatory presumptions may violate the defendant's due process rights and relieve the State of its burden to prove every element of the crime charged. *Deal*, 128 Wn. At 699. Presumptive inferences, on the other hand, allow the jury to find a presumed fact from a proven fact, but the jury is not required to do so. *Deal*, 128 Wn.2d at 699.  With permissive inferences, the State is not relieved of its burden of proof because it must still persuade the jury that the proposed inference should follow from the proven facts. *Deal*, 128 Wn.2d at 700.

> To determine the nature of the presumption, we must pay careful attention to the words actually spoken to the jury and then determine how a reasonable juror would interpret the instruction. *Sandstrom v. Montana*, 442 U.S. 510, 514-515, 99 S.Ct. 2450, 61 L. Ed. 2d 39 (1979).  In *Sandstrom* the Supreme Court held that an instruction was unconstitutional because the trial court did not tell the jurors they might infer a conclusion, or that they had a choice. 442 U.S. at 515.  Rather, they were told that the law presumed the conclusion, leading the jurors to believe that the conclusion was mandatory. *Sandstrom*, 442 U.S. at 515.

> We must determine whether instruction nine lead reasonable jurors to believe,

as a matter of law, that Mannering was Ulery's accomplice. Instruction nine cautioned the jury about "[t]he testimony of an accomplice, given on behalf of the [State]." WPIC 6.05.  In *State v Carothers*, our Supreme Court held that a cautionary accomplice instruction such as the one here is not erroneous.  84 Wn. 2d 256, 525 P.2d 731 (1974)(holding a cautionary accomplice instruction did not constitute an improper comment of the evidence), *overruled on other grounds*, *State v Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984).  The Court concluded that "[i]t would be an unwarranted affront to the intelligence of the jury to suppose that it did not understand the import of the instruction, namely, that it should act with caution upon the testimony of [the alleged accomplice] which implicates the petitioner." *Carothers*, 84 Wn. 2d at 267.  *Carothers* is controlling and we hold that instruction nine was not erroneous.

(Dkt. # 17, Exhibit 24, pages 5 to 7).  The Washington State Supreme Court considered the claim and held:

> The trial court read the jury instruction, a standard instruction on the testimony of an accomplice offered on behalf of the State.  The instruction stated that "[t]he testimony of an accomplice...should be subject to careful examination in the light of the other evidence in the case, and should be acted upon with great caution," and that the jury"should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, [it is] satisfied beyond a reasonable doubt of its truth."  *See* 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 6.05, at 136.  Mr. Ulery argues that this instruction created an impermissible mandatory presumption that he and Ms. Mannering were accomplices to one another.  But the jury instruction did not tell the jury to presume anything about accomplice liability.  Though the instruction plainly was directed at Ms. Mannering's testimony, the gist of it was simply that the jury was to view that testimony with caution to the extent it implicated Mr. Ulery.  It would be "an unwarranted affront to the intelligence of the jury to suppose that it did not understand" the instruction in this way.  *State v Carothers*, 84 Wn. 2d 256,267, 525 P.2d 731 (1974)(holding the trial court did not err in refusing to qualify the word "accomplice" with the phrase "or one who claims to be an accomplice").

> Moreover, to the extent Mr. Ulery claims constitutional error, he fails to show that he was actually and substantially prejudiced.  *See in re Pers. Restraint of Lord*, 123 Wn.2d 296, 303 868 P.2d 835 (1994).  If the jury believed Ms. Mannering's testimony, as it evidently did, it necessarily followed the[sic] Mr. Ulery was an accomplice to her crimes.

(Dkt. # 17, Exhibit 26, page 2).

Both The Washington State Court of Appeals and the Washington State Supreme Court identified the proper standard for review of this claim.  Mr. Ulery has failed to show that an instruction cautioning the jury to view an accomplices testimony with caution created an impermissible inference that Ms. Mannering was in fact his accomplice.  The jury was not told to consider her an accomplice or told that as a matter of law she was an accomplice.  The decisions of the state courts were not contrary to, and did not  involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court.  Nor do the state court decisions on this issue resulted in decisions that are based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner is not entitled to any relief on this issue.

> **B.** <u>Issues involving the testimony of Ms. Lemour.</u>

Petitioner claims counsel was ineffective in not investigating the character of Ms. Lemour prior to calling her as a witness.  Petitioner also claims counsel was ineffective for not moving for a mistrial when she was found to be in contempt of court in the presence of the jury.

The Washington State Court of Appeals held:

> Ulery's trial counsel is unavailable, but Lemour presumably remains available to address the extent of Ulery's counsel's trial preparation with her. Ulery did not provide a declaration from Lemour. Furthermore, as the State pointed out in oral argument on appeal, Lemour provided substantial evidence in favor of Ulery. The record provides the specifics of her testimony. Lemour testified that she and Ulery were old friends. She had a phone conversation with Ulery on April 4, 1999 that lasted for 22 minutes. During the call Lemour said she could hear a woman in the background "ranting and raving about wanting to go kill Vicki." Report of Proceedings (RP) at 264. Lemour noted that at the time, Ulery was "agitated, upset, and very intoxicated." RP 263. Lemour testified that she called Ulery again at 8:39 P.M., but Mannering answered the phone. Mannering said Ulery was "passed out" and could not come to the phone RP at 266. during the second call, Mannering told Lemour that she intended to kill Allie. At 9:49 P.M., Lemour called Ulery once more. Mannering again answered. When Lemour asked to speak to Ulery, Mannering told her he was passed out and hung up.

> The fact that a witness provides both expected and positive testimony, as well as less positive or unexpected testimony is not a sufficient basis to find counsel ineffective based on inadequate witness preparation. Here, there is no evidence of actual prejudice to Ulery arising from Lemour's testimony. Ulery and Mannering themselves provided overwhelming evidence of Ulery's involvement with Mannering's attack on Allie.

> We presume Ulery's counsel acted diligently in preparing Lemour and Ulery provides no evidence to the contrary. Thus, we conclude that his performance did not fall below a reasonable standard and did not prejudice Ulery.

> Ulery also claims ineffective assistance of counsel because his attorney did not move for a mistrial when the court found Lemour in contempt with the jury present. Failure to move for a mistrial under these circumstances does not meet the stringent standards of unreasonableness. A mistrial is only appropriate where nothing the trial court could have said or done would have remedied the harm done to the defendant, and the trial court has broad discretion to cure any trial irregularities. *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172 (1992). Here, Ulery's counsel could reasonable have believed that a request for a mistrial based on the trial court's response to Lemour's testimony would not have been granted and would only have drawn attention to the court's admonishment of this defense witness. We will not seek to second guess the trial attorney's tactics where they are not manifestly unreasonable. *Stenso*n, 142 Wn.2d 710, 742, 16 P.3d 1 (quoting *Strickland*, 466 [U.S.] at 689-90).

Thus Ulery's claim of ineffective assistance of counsel on these grounds also fails.

(Dkt. # 17, Exhibit 24, pages 9 to 11).  The Washington State Supreme Court held:

> Mr. Ulery also argues that trial counsel was ineffective in not adequately investigating the character of a defense witness who was found in contempt of court during cross-examination, and in not moving for a mistrial after the court held the witness in contempt.  But the Court of Appeals held that counsel committed no unprofessional error and that, if he did, Mr. Ulery failed to demonstrate prejudice.  Mr. Ulery does not show that the court obviously or probably erred.  He urges that the court should have ordered a reference hearing.  But because Mr. Ulery made no prima facie showing of prejudice, and because the record was sufficient to evaluate the merits of Mr. Ulery's claim, the court declined to order a hearing.  Mr. Ulery again demonstrates no error meriting this court's review.

(Dkt. # 17, Exhibit 26, pages 2 and 3).

The state courts properly identified the two prong test set forth to determine if counsel has been ineffective.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  Further, the state court's application of that test to the facts of this case does not result in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Indeed, petitioner fails to show what steps counsel took or failed to take in preparing Ms. Lemour for her testimony.  The witness provided helpful testimony on direct and the decision to call her did not fall below a reasonable standard.

Ms. Lemour testified about a number of calls she placed to the hotel room in Tumwater where Mr. Ulery and Ms. Mannering were staying.  She testified that at 8:39 P.M. she spoke to Ms. Mannering and Mr. Ulery was "passed out."  She claimed that in this conversation Ms. Mannering indicated she intended to kill "Vicki."  (Dkt. # 17, Exhibit 2, page 265).  Counsel could not have foreseen that the witness would be effectively impeached based on the timing of her phone calls to the hotel room and when the crime was allegedly committed, that she would become hostile to counsel on cross-examination, or that she would refused to follow repeated court orders and be found in contempt.  Thus, counsels representation did not fall below an objectively reasonable standard.  (Dkt. # 17, Exhibit 2, pages 268 to 306).

Counsels not moving for a mistrial was also a reasonable tactical move.  There was little chance of obtaining a mistrial as the standard for a mistrial is very high.  This court concurs with the Washington State Court of Appeal when it stated "Ulery's counsel could reasonable have believed

that a request for a mistrial based on the trial court's response to Lemour's testimony would not have been granted and would only have drawn attention to the court's admonishment of this defense witness." (Dkt. # 17, Exhibit 9, page 11). A mistrial is only appropriate where nothing the trial court could have said or done would have remedied the harm done to the defendant.

Under the second prong of the Stickland petitioner must show he was prejudiced. This does not mean he needs to show the verdict would have been different, but he does need to show he did not receive a fair trial as a result of counsel's failure to act. Petitioner has failed to meet that burden of proof.

In considering whether a trial irregularity warrants a new trial, the court must consider (1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction. State v. Escalona, 49 Wash.App. 251, 254, 742 P.2d 190 (1987). The appropriate inquiry is whether the testimony, when viewed against the backdrop of all the evidence, so tainted the trial as to prevent petitioner receiving a fair trial.

The evidence against petitioner is compelling. Ms. Mannering incriminated petitioner in the crimes. Further, her testimony was corroborated by the victim, and witnesses, including an eye witness to Ms. Mannering leaving the crime scene, (Dkt. # 17, Exhibit 1 pages 45 to 49) Another witness testified she spoke with Mr. Ulery and was at least introduced to Ms. Mannering earlier that day across from the crime scene and that Mr. Ulery offered her money to try and convince the victim to drop domestic violence charges. That witness testified Mr. Ulery was extremely angry and emotionally upset. (Dkt # 17, pages 86 to 118). Further, phone calls to 911 and the testimony on persons making those calls show the crime occurred around 8:21 P.M. on the night of April 4th, 1999. (Dkt. # 17, Exhibit 1 pages 52 to 55). Ms. Lemour's testimony included her testifying about a phone call she had with Mr. Ulery where she heared Ms. Mannering in the background stating she wanted to "go kill" the victim 18 minutes after the crime had taken place. (Dkt. # 17, Exhibit 2, page 264).

In addition the police obtained a warrant to record a telephone call in which Ms. Mannering asks "[w]hy didn't you fucking do it yourself?" Mr. Ulery answers, "I don't know, I was drunk, we

made a big mistake. Now we've got to do this right and just forget it. Okay?"  (Dkt. # 17, Exhibit 5).

Also before the jury was a taped statement given by Mr. Ulery to detective Quantz after Mr. Ulery

was arrested and had waived his right to remain silent or speak with counsel.  Mr. Ulery admits to

discussing killing Vicky Allie and to giving Ms. Mannering a knife so she could kill Ms. Allie.  (Dkt.

# 17, Exhibit 6).

       Viewing all the evidence the court is convinced that failure to move mistrial after Ms.

Lemour was found in contempt of court did not deny petitioner a fair trial.  Petitioner is not entitled

to relieve.

CONCLUSION

       This petition is without merit and should be **DENIED.**  A proposed order accompanies this

report and recommendation.

       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

72(b), the clerk is directed to set the matter for consideration on **October 22nd, 2006**, as noted in

the caption.

       Dated this 22nd,  day of September, 2006.

                         */S/ J. Kelley Arnold*
                         J. Kelley Arnold
                         United States Magistrate Judge